IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Criminal Action No. |
| v. ) | 07-00218-01-CR-W-NKL |
| ) | |
| EMMANUEL ROBINSON, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

On February 14, 2008, defendant moved for a judicial determination of mental competency. Defendant was examined at the Medical Center for Federal Prisoners in Springfield, Missouri, by Christina Pietz, Ph.D., a board certified psychologist. Dr. Pietz stated that defendant was competent to proceed as his bipolar disorder was controlled by medication. However, Dr. Pietz stated, "[S]hould Mr. Robinson's medication be changed or discontinued for any reason, in all likelihood he will quickly decompensate and not be competent to proceed. It is noteworthy that Mr. Robinson sporadically complies with his medication. In all likelihood, he will stop taking medication if given the chance." I held a competency hearing on May 2, 2008 (transcript is document number 47). Defense counsel indicated that she would have defendant examined by another doctor for a second opinion. Defendant was subsequently examined by John Wisner, M.D., who found defendant not competent.

I held a competency hearing on July 16, 2008. Defendant was present, represented by Assistant Federal Public Defender Ronna Holloman-Hughes. The government was represented by Assistant United States Attorney Jess Michaelsen. The parties stipulated to the reports of Dr. Pietz and Dr. Wisner. Both doctors testified during the competency hearing.

Dr. Pietz testified that during the first two weeks when defendant was at Springfield, his behavior was violent (Tr. at 5-6[1]). Defendant "barely performed" the Validity Indicator Profile, and failed to complete the MMPI due to his inability to use the equipment because of his violent behavior (Tr. at 6). She also testified that in her opinion, defendant's condition could deteriorate to the point of lack of competence within a day or two of any changes or discontinuation of medication (Tr. at 5). Dr. Pietz had not seen Dr. Wisner's report or any medical records from CCA, and she had not seen defendant since he left the medical center in approximately April 2008 (Tr. at 6-8). When asked if she believes defendant is competent now, Dr. Pietz said, "I haven't seen him for several months. When he left our facility, it was my opinion that he was competent to stand trial." (Tr. at 19).

---

[1]"Tr." refers to the transcript of the second competency hearing, document number 51.

Dr. Wisner examined defendant on May 29, 2008 (Tr. at 8-9). Dr. Wisner had defendant's medical records from CCA (Tr. at 10). Dr. Wisner believes that at any given time, defendant could be a little more or a little less symptomatic (Tr. at 10). By that, he means that defendant may be more willing at times to discuss his paranoid delusions and his feelings of reference and influence (Tr. at 10). However, Dr. Wisner believes that those symptoms are present all or nearly all of the time (Tr. at 10). Dr. Wisner believes that defendant was too psychotic and too disorganized in Springfield to be testable (Tr. at 11).

Dr. Wisner testified that defendant does not recognize that his symptoms are symptoms (Tr. at 11). "He has been ill chronically enough and the illness is of sufficient severity that he totally lacks insight. And he thinks that's the way it's supposed to be." (Tr. at 11). Although defendant understood the charges against him and the possible penalty, he could not distinguish between a "jury" and "jewelry" (Tr. at 12). This is a result of thought disorder, not due to education or vocabulary (Tr. at 12). Dr. Wisner did not believe defendant had an adequate mental representation of what happens during the course of a trial and cannot therefore assist in his own defense (Tr. at 12-13, 15). Defendant believes that people, including his defense attorney, can read his thoughts, defendant communicates

3

by "gazing into his eyes" and believes that looking into someone's eyes conveys a coded message (Tr. at 13). As a result of all of this, Dr. Wisner believes that defendant is not competent to proceed (Tr. at 12-13).

When asked whether he believes defendant's competence can be restored, Dr. Wisner said:

> I believe that's possible. I would certainly want to, you know, stand him on his head and bounce him up and down to be very sure that he didn't have these specific symptoms, namely, the notion that he can communicate without speaking. In other words, as many schizophrenic patients, if he says good morning to you he may be of the fixed opinion that he just told you, you know, volumes of information that were somehow encoded in that transaction. And likewise, that if you look at him and blink and scratch your nose that you have just communicated to him volumes and volumes of information. So, that's the thing I think that is at this point deadly to his ability to interpret what goes on in the courtroom and make decisions, and even for that matter, interpret the advice of his attorney.

(Tr. at 15).

Dr. Wisner believes that defendant needs psychiatric treatment in a mental facility within the Bureau of Prisons rather than being treated at a detention facility such as CCA (Tr. at 16).

> I think it's a matter of dose and duration of treatment. So, with some combination of those two, he could probably survive in a relatively quiet detention facility for the two days it might take to conduct a trial. Keeping in mind he's schizophrenic. So, if we put him in a very chaotic, unpredictable, highly-charged set of circumstances, he'll probably have more trouble thinking clearly and making unclouded decisions. By the same token, if he's in a relatively predictable setting, you know, we don't pull any

4

> surprises on him or it would be that he would probably be predictably thinking clearly for the necessary period of time.

(Tr. at 17).

Defense counsel submitted defendant's medical records from CCA as an exhibit. Defendant stated at the conclusion of the hearing that he did not believe he needed to go to another hospital (Tr. at 24-25).

Based on the evidence before me, I find that the defendant is not competent to stand trial and to assist in his defense. Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and applicable law, enter an order finding defendant incompetent to stand trial and to assist in his defense. It is further

RECOMMENDED that the court commit defendant to the custody of the Attorney General for hospitalization and treatment pursuant to 18 U.S.C. § 4241(d). It is further

ORDERED that prior to physically transferring defendant to Kansas City upon the reinstatement of his competency (regardless of when that occurs), the Warden or a designated representative shall contact counsel in this case to determine how to maintain

5

defendant's competency throughout his trial[2].

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
July 21, 2008

---

[2]Dr. Pietz believed it important to transport defendant directly to Kansas City from any medical facility and avoid transferring defendant from place to place (specifically avoiding any holdovers in jails) in order to maintain his competency for trial should his competence be restored (Tr. at 21-22).

6