IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Action No. |
| v. | ) | 07-00218-01-CR-W-NKL |
| | ) | |
| EMMANUEL ROBINSON, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Before the court is a request for extension of time for commitment to the United States Medical Center for Federal Prisoners in Springfield, Missouri. I find that there is a substantial probability that within the requested time defendant may attain the capacity to permit the proceedings to go forward. Therefore, it is recommended that the extension of time be granted.

*I. BACKGROUND*

On June 20, 2007, an indictment was returned charging defendant with two violations of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). On February 14, 2008, defendant filed a motion for judicial determination of mental competency. Defendant was examined at the Medical Center for Federal Prisoners in Springfield, Missouri, by Christina Pietz, Ph.D., a board certified psychologist. Dr. Pietz stated that defendant was competent to proceed as his bipolar disorder was controlled by medication. However, Dr. Pietz stated,

> [S]hould Mr. Robinson's medication be changed or
> discontinued for any reason, in all likelihood he will
> quickly decompensate and not be competent to proceed. It is
> noteworthy that Mr. Robinson sporadically complies with his
> medication. In all likelihood, he will stop taking
> medication if given the chance.

Defendant sought a second opinion and was subsequently examined by John Wisner, M.D., who found defendant not competent. I held a competency hearing on July 16, 2008. Dr. Pietz testified that during the first two weeks when defendant was at Springfield, his behavior was violent. Defendant "barely performed" the Validity Indicator Profile, and failed to complete the MMPI due to his inability to use the equipment because of his violent behavior. She also testified that in her opinion, defendant's condition could deteriorate to the point of lack of competence within a day or two of any changes or discontinuation of medication. Dr. Pietz had not seen Dr. Wisner's report or any medical records from CCA, and she had not seen defendant since he left the medical center in approximately April 2008. When asked if she believes defendant was currently competent, Dr. Pietz said, "I haven't seen him for several months. When he left our facility, it was my opinion that he was competent to stand trial."

Dr. Wisner examined defendant on May 29, 2008. Dr. Wisner had defendant's medical records from CCA and believed that at any given time, defendant could be a little more or a little less symptomatic. By that, he meant that defendant may be more willing

2

at times to discuss his paranoid delusions and his feelings of reference and influence. However, Dr. Wisner believed that those symptoms were present all or nearly all of the time. Dr. Wisner believed that defendant was too psychotic and too disorganized in Springfield to be testable. Dr. Wisner testified that defendant did not recognize that his symptoms were symptoms. "He has been ill chronically enough and the illness is of sufficient severity that he totally lacks insight. And he thinks that's the way it's supposed to be." Although defendant understood the charges against him and the possible penalty, he could not distinguish between a "jury" and "jewelry". This was a result of thought disorder, not due to education or vocabulary. Dr. Wisner did not believe defendant had an adequate mental representation of what happens during the course of a trial and could not therefore assist in his own defense. Defendant believed that people, including his defense attorney, could read his thoughts; defendant communicated by "gazing into his eyes" and believed that looking into someone's eyes conveyed a coded message. As a result of all of this, Dr. Wisner believed that defendant was not competent to proceed. When asked whether he believed defendant's competence could be restored, Dr. Wisner said:

> I believe that's possible. I would certainly want to, you know, stand him on his head and bounce him up and down to be very sure that he didn't have these specific symptoms, namely, the notion that he can communicate without speaking. In other words, as many schizophrenic patients, if he says good morning to you he may be of the fixed opinion that he

3

> just told you, you know, volumes of information that were
> somehow encoded in that transaction. And likewise, that if
> you look at him and blink and scratch your nose that you
> have just communicated to him volumes and volumes of
> information. So, that's the thing I think that is at this
> point deadly to his ability to interpret what goes on in the
> courtroom and make decisions, and even for that matter,
> interpret the advice of his attorney.

Dr. Wisner believed that defendant needed psychiatric treatment in a mental facility within the Bureau of Prisons rather than being treated at a detention facility such as CCA.

> I think it's a matter of dose and duration of treatment. So,
> with some combination of those two, he could probably
> survive in a relatively quiet detention facility for the two
> days it might take to conduct a trial. Keeping in mind he's
> schizophrenic. So, if we put him in a very chaotic,
> unpredictable, highly-charged set of circumstances, he'll
> probably have more trouble thinking clearly and making
> unclouded decisions. By the same token, if he's in a
> relatively predictable setting, you know, we don't pull any
> surprises on him or it would be that he would probably be
> predictably thinking clearly for the necessary period of
> time.

Based on all of this evidence, the court found defendant not competent to proceed and ordered that he be committed for treatment pursuant to 18 U.S.C. § 4241(d)(1) for a period not to exceed four months.

## II. *REQUEST FOR ADDITIONAL TIME FOR TREATMENT*

On March 12, 2009, Dr. Pietz prepared a treatment summary and request for extension of commitment. The report states in part as follows:

> Initially, when he returned to the United States Medical
> Center, he was making remarkable progress. In my opinion,
> he was close to being competent to stand trial. However, in
> late February he began complaining that staff were

4

whispering about him when he left the unit. He presented as
increasingly paranoid.  His thoughts were organized but
irrational.  It was becoming increasingly difficult to
maintain a lengthy, meaningful conversation with him; he
frequently referenced his delusional ideas.

Recently, Mr. Robinson was moved to a locked unit for
assaulting another inmate at this facility.  While playing
pool in the recreation center, Mr. Robinson believed another
inmate was approaching him in a threatening manner with a
pool stick.  Consequently, he struck him with a closed fist.
He has been living on the locked unit since the incident.

Since Mr. Robinson's arrival, he had been prescribed
medication and has regularly taken it.  However, his
condition has recently worsened.

As noted above, Mr. Robinson had made improvements since his
arrival.  However, currently he is not competent to stand
trial. Hence, an extension to his period of commitment is
requested. It is believed that this additional period of
time may allow Mr. Robinson to improve and reach competency
to stand trial.

I held a teleconference on April 9, 2009.  Defendant was represented by Assistant United States Attorney Ronna Holloman-Hughes.  The government was represented by Assistant United States Attorney Jess Michaelsen.  Counsel agreed that an additional four months of treatment would be reasonable.

### III. CONCLUSION

Title 18, United States Code, Section 4241(d) reads in pertinent part as follows:

> . . . The Attorney General shall hospitalize the defendant
> for treatment in a suitable facility --
>
>> (1)  for such a reasonable period of time, not to
>> exceed four months, as is necessary to determine
>> whether there is a substantial probability that in the
>> foreseeable future he will attain the capacity to
>> permit the proceedings to go forward; and

5

>           (2)  for an additional reasonable period of time
>     until --
>
>           (A)  his mental condition is so improved that
>           trial may proceed, if the court finds that there
>           is a substantial probability that within such
>           additional period of time he will attain the
>           capacity to permit the proceedings to go forward;
>           or
>
>           (B)  the pending charges against him are
>           disposed of according to law;
>
>     whichever is earlier.
>
> If, at the end of the time period specified, it is
> determined that the defendant's mental condition has not so
> improved as to permit proceedings to go forward, the
> defendant is subject to the provisions of sections 4246 and
> 4248.

Based on all of the above, I find that there is a substantial probability that within four additional months defendant will attain the capacity to permit the proceedings to go forward. Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order granting a four-month extension of time for defendant's commitment to the United States Medical Facility for Federal Prisoners in Springfield, Missouri. It is further

ORDERED that prior to physically transferring defendant to Kansas City upon the reinstatement of his competency (regardless of when that occurs), the Warden or a designated representative

6

shall contact counsel in this case to determine how to maintain defendant's competency throughout his trial.[1]

Counsel waived the ten-day objection period provided by 28 U.S.C. § 636(b)(1). Therefore, any objections to this Report and Recommendation shall be filed by April 15, 2009.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
April 14, 2009

---

[1] 2Dr. Pietz believed it important to transport defendant directly to Kansas City from any medical facility and avoid transferring defendant from place to place (specifically avoiding any holdovers in jails) in order to maintain his competency for trial should his competence be restored.

7